IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

ANDERSON DIVISION

| | |
|---|---|
| Edward L. Dean, #279727, ) | |
| ) | Civil Action No. 8:04-1047-13BI |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| William D. Catoe, Director, Jon ) | |
| Ozmint, Director, South Carolina ) | |
| Department of Corrections, ) | |
| ) | |
| Defendants. ) | |
| ) | |

The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

The plaintiff is currently incarcerated at Lee Correctional Institution. He originally filed his complaint on April 7, 2004, alleging that his classification status within the South Carolina Department of Corrections ("SCDC") is incorrect. The plaintiff claimed that because he was imprisoned in 2001 pursuant to a five-year sentence for forgery, he should not have been assigned to Level Three institutions within the SCDC system, which are more restrictive than the Level Two institutions where the plaintiff preferred to be placed. The plaintiff also alleged that the South Carolina statutes giving the director of the SCDC the ability to control and direct the agency are unconstitutional.

On September 7, 2004, the defendants filed a motion for summary judgment. By order of this court filed September 14, 2004, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed a response to the motion on October 14, 2005.

## **FACTS PRESENTED**

As set forth above, the plaintiff alleges that he has been improperly classified within the SCDC system, resulting in his placement at more restrictive institutions than he thinks appropriate. In his complaint, the plaintiff alleges that when he was processed initially at the Reception and Evaluation Center at Kirkland Correctional Institution (KCI), he was led to believe that he would be housed in a less restrictive institution and would be eligible for work release (comp at 3). The plaintiff alleges that because bed space was not available at a less restrictive institution, he was assigned to Lieber Correctional Institution, a Level Three facility. The plaintiff claims that his status as a "five year nonviolent inmate/convict" should have resulted in placement in a Level Two institution, and that the defendants did not follow SCDC regulations in transferring him out of Lieber to a less restrictive institution (comp. at 3-4). The plaintiff further alleges that he "stayed out of his security level assignment for approx. 7 months on Lieber Level III Institution."

In his complaint, the plaintiff admits to having discipline infractions while at Lieber. As a result, his custody level was lowered. He alleges that he was then transferred to KCI, where he received more disciplinary infractions against him, so he was sent to the Close Custody Unit at Lee Correctional Institution. The plaintiff claims that as a result of his classification, he was deprived of work release and rehabilitative programs.

Additionally, the plaintiff alleges that the "stress" caused by his improper classification status has caused him to have behavior problems in prison, resulting in even more

2

disciplinary infractions. The plaintiff cites several instances where he received infractions for being out of place, having a weapon, sexual misconduct and fighting (comp. at 6-10). He further alleges that he has suffered mental stress from being classified as a violent inmate, and this stress, combined with the prison conditions, caused him to behave badly. He also claims that his mis-classification and his constant complaining about it have resulted in assaults on him by other inmates.

The defendants submitted the affidavit of Vincent Black, an inmate classification caseworker at LCI, who states that he is familiar with the plaintiff's custody and classification status. Mr. Black summarizes the plaintiff's custody levels, showing that he has been held at Level Two and Level Three institutions since entering the system in November 2001 (Black aff. ¶ 4). Mr. Black further outlines the numerous disciplinary offenses for which the plaintiff has been convicted during his incarceration, resulting in his placement in Level Three institutions:

> While attempts have been made to place the plaintiff in a Level Two Institution during his incarceration, the plaintiff has found it impossible to maintain a satisfactory disciplinary record sufficient to enable him to remain at a lower level institution. As noted above, the inmate custody and classification system is behavior driven, based upon an inmate's inclination to remain out of disciplinary trouble while incarcerated. Unfortunately, the plaintiff has demonstrated an inability to remain sufficiently disciplinary free, which has resulted in ICC placing him in more restrictive institutions when his behavioral history has degenerated. When it has become necessary to place the plaintiff in a close custody unit, it was required to send him to a Level Three institution, as only Lee, Perry, Evans, and Lieber Correctional Institutions have close custody units. These facilities are all rated at Level Three, and therefore, in order to house the plaintiff in a close custody unit, as mandated by his disciplinary performance, it was necessary to move him to a Level Three Institution.

(Black aff. ¶ 10). Finally, Mr. Black notes that if the plaintiff had maintained a spotless disciplinary record, he would have already been released from prison (Black aff. ¶ 11).

The defendants also submitted the affidavit of Sandra Bowie, an Inmate Grievance Administrator within the SCDC. Ms. Bowie avers that her review of the file regarding

the plaintiff reveals that he had submitted a Step One grievance concerning his classification status, which was denied, and that the Step Two grievance was "still in the process of being responded to" (Bowie aff. ¶ 5).

## APPLICABLE LAW

Rule 56(c) of the Federal Rules of Civil Procedure states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the

summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

### *Exhaustion of Administrative Remedies*

The defendants argue that the plaintiff's complaint should be dismissed because he failed to exhaust his administrative remedies (i.e., the prison's grievance procedure) before filing suit against the defendants. Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a). As the Supreme Court recently observed:

> Beyond doubt, Congress enacted §1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524-25 (2002) (citations and quotations omitted). The Court held that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.

In *Al-Shabazz v. State*, 338 S.C. 354, 527 S.E.2d 742 (2000), the South Carolina Supreme Court outlined the administrative remedies available to a state prisoner for obtaining review of a final decision of the SCDC in a non-collateral or administrative matter. First, the inmate must file a grievance, whether he challenges a disciplinary outcome, calculation of sentence-related credits, custody status, or other condition of imprisonment. *Id.* at 753 ("initiating a grievance is the method an inmate uses to challenge such decisions within the prison system"). The grievance procedure "give[s] an inmate a method to raise the matter to prison officials and create a reviewable record." *Id*. Furthermore, the court in *Al-Shabazz* specifically held that the defendant's "disciplinary and grievance procedures are consistent with the standards delineated by the Supreme Court in *Wolff v. McDonnell*, 418 U.S. 539 (1974)." *Id.* at 752.

Once a final decision has been made by the SCDC, an inmate in certain cases may seek review by an Administrative Law Judge ("ALJ"), who "sits in an appellate capacity to review Department's decisions." *Id.* at 754. Thereafter, an inmate may seek judicial review of an ALJ's decision by filing a petition with the circuit court and a notice of appeal with the clerk of the ALJ division. *Id.* Such review is limited, however, to "errors or abuses allegedly committed by the ALJ." *Id.* at 755. An inmate may also obtain appellate review of any final judgment of the circuit court. *Id.* at 756.

In a case following *Al-Shabazz*, the South Carolina Supreme Court had occasion to again consider this issue in a different factual context. *Sullivan v. South Carolina Department of Corrections*, 355 S.C. 437, 586 S.E.2d 124 (2003). In *Sullivan*, the court reviewed a decision by the ALJD ruling that it had no jurisdiction in a dispute between an inmate and the South

Carolina Department of Corrections over whether the inmate had a right to be enrolled in a treatment program. In denying the inmate's claim, the court found that the grievance was not a typical *Al-Shabazz* claim. The court stated:

> Under *Wolff; Sandin; Al-Shabazz;* and *Furtick*, to determine whether Sullivan is entitled to review of the SCDC's decision, the Court must decide whether Sullivan's request for access to [the treatment program] implicates a liberty interest sufficient to trigger procedural due process guarantees. The only way for the ALJ Division to obtain subject matter jurisdiction over Sullivan's claim is if it implicates a state-created liberty interest.

The defendants argue that although the plaintiff submitted a grievance concerning his classification status, he never completed the SCDC grievance process, nor did he file any request for review with the ALJD. Thus, the defendants argue, the ALJD was never given the opportunity to determine whether or not it would have jurisdiction in this case involving classification status, and, therefore, this action must be dismissed. This court agrees. However, out of an abundance of caution, this court will address several of the other substantive issues raised by the defendants.

### *Classification Status*

As detailed above, the plaintiff alleges that he has been improperly classified within the SCDC system, resulting in his being housed in overly restrictive and allegedly violent institutions, in violation of his constitutional rights.

The plaintiff has failed to state any type of constitutional claim on this issue. Prisoners do not have a constitutionally recognized liberty interest in a particular security classification or prison placement, *Hewitt v. Helms*, 459 U.S. 460, 468 (1983), nor do they have any liberty interest in remaining at a specific prison. *Olim v. Wakinekona*, 461 U.S. 238 (1983); *see also Posey v. Dewalt*, 86 F.Supp.2d 565 (E.D.Va. 1999)(inmates have no protected liberty interest in a particular classification). Moreover, placement in security detention for non-punitive

7

reasons does not automatically trigger rights under the due process clause. *Hewitt; Sandin v. Connor*, 515 U.S. 472 (1995). Accordingly, the plaintiff's claim is without merit.[1]

*Grievance Procedure*

The plaintiff also arguably makes a claim concerning the handling of his grievances. The plaintiff maintains that his grievances were not handled properly. Assuming these defendants failed to handle the grievances properly, the plaintiff has failed to state a cause of action under §1983. The grievance procedure is a procedural, not a substantive right, and a prison official's alleged failure to comply with the state's grievance procedure is not actionable under §1983. *Brown v. Dotson*, 863 F.Supp. 284 (W.D.Va.1994). State inmates have "no entitlement to grievance procedures." *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)(citations omitted); *Mitchell v. Murray*, 856 F.Supp. 289, 294 (E.D. Va. 1994). Accordingly, this claim is without merit.

*Eleventh Amendment Immunity*

As state officials and employees acting in their official capacities, the defendants are also protected by Eleventh Amendment immunity. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-71 (1989). The Supreme Court has stated:

> Section 1983 provides a forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. The Eleventh Amendment bars such suits unless the State has waived its immunity,

*Id*. at 66. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office... . As such, it is not different from a suit

---

[1] This court notes as well that the classification system in the SCDC is partly behavior driven. *See* Black aff. ¶ 6. Thus, the plaintiff's multiple disciplinary problems, while in prison, are at least partially responsible for his classification status. The plaintiff's claims that he misbehaved in prison as a result of his classification status are unconvincing to this court.

8

against the State itself ...." *Id.* at 71 (citations omitted). Thus, as to this action brought against the defendants in their official capacities, Eleventh Amendment immunity applies and summary judgment is appropriate.

*Qualified Immunity*

The defendants argue that they are entitled to qualified immunity from suit in this case because their conduct did not violate any clearly-established constitutional or statutory rights of which a reasonable person should have known. Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it. *Id.* Thus, in ruling on a defense of qualified immunity, a court must (1) identify the specific right allegedly violated; (2) determine whether at the time of the alleged violation the right was clearly established; and (3) if so, determine whether a reasonable person in the official's position would have known that his action would violate the right. *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992).

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 286, 290 (1999); *see also Suarez Corp. Indus. v. McGraw,* 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson,* 526 U.S. at 609. If the court first determines that

9

no right has been violated, the inquiry ends there, "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott,* 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendants violated any of his constitutional rights. Therefore, the defendants are entitled to qualified immunity on these claims.

### *South Carolina Tort Claims Act*

The defendants further assert that they are entitled to summary judgment on any state law claims because the plaintiff's claims are barred under the South Carolina Tort Claims Act. S.C. Code Ann. §15-78-10 *et seq*. (Supp. 1993). Section 15-78-40 of the Act provides that "[t]he State, an agency, a political subdivision, and a governmental entity are liable for their torts in the same manner and to the same extent as a private individual under like circumstances, subject to the limitations upon liability and damages, and exemptions from liability and damages, contained herein." The limitations upon governmental liability are contained in §15-78-60 and include an action for:

> ... a loss resulting from: .... (25) responsibility or duty including but not limited to supervision, protection, control, confinement, or custody of any student, patient, **prisoner, inmate**, or client of any governmental entity, except when the responsibility or duty is exercised in a grossly negligent manner.

S.C. Code Ann. §15-78-60 (25) (Supp. 1993) (emphasis added).

The plaintiff has alleged no facts which would imply gross negligence on the part of the defendants and thus his action is barred under the Act. *See Summers v. Harrison Const.*, 298 S.C. 451, 454, 381 S.E.2d 493, 495 (Ct. App. 1989) (noting that the provisions of the Act relating to limitations on and exemptions to liability should be liberally construed in favor of limiting the liability of the state).

*State Law Claim*

To the extent the plaintiff also attempts to allege a cause of action under South Carolina law, because the plaintiff's federal claims fail, the court should decline to exercise supplemental jurisdiction over the plaintiff's remaining state law claims. *See* 28 U.S.C. §367(c).

## **CONCLUSION AND RECOMMENDATION**

Based on the foregoing, it is recommended that the defendants' motion for summary judgment be granted. It is further recommended that all pending nondispositive motions be held in abeyance pending the ruling by the District Court on this recommendation. If the District Court adopts the recommendation contained herein, these motions will be rendered moot.

s/Bruce H. Hendricks
United States Magistrate Judge

March 25, 2005

Greenville, South Carolina